# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS

| | | |
|---|---|---|
| ERIC MOORE and MALISE MOORE, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action: 3:23-cv-1851 |
| | § | |
| | § | With Jury Demand Endorsed |
| EQUIFAX INFORMATION SERVICES LLC, | § | |
| EXPERIAN INFORMATION SOLUTIONS, | § | |
| Inc., TRANS UNION LLC, and | § | |
| NATIONSTAR MORTGAGE LLC, | § | |
| successor by merger to SETERUS, Inc., | § | |
| | § | |
| | § | |
| Defendants. | § | |

---

## COMPLAINT

TO THE HONORABLE UNITED STATES DISTRICT COURT JUDGE:

Plaintiffs, Eric and Malise Moore ("Plaintiffs"), by and through counsel, for their Complaint

against Defendants, Equifax Information Services LLC, Experian Information Solutions, Inc., Trans

Union LLC, and Nationstar Mortgage LLC, successor by merger to Seterus, Inc., jointly, severally,

and in solido, states as follows:

### I. INTRODUCTION

1.      Three of the Defendants are consumer reporting agencies ("CRAs") as defined by 15

U.S.C. § 1681a(f), and Defendant, Nationstar Mortgage LLC, successor by merger to Seterus, Inc.,

is a furnisher of consumer information. All Defendants have violated 15 U.S.C. § 1681 *et seq.*, known as the Fair Credit Reporting Act (the "FCRA"). Plaintiffs seek to recover from Defendants actual, statutory, and punitive damages, injunctive relief, legal fees, and expenses.

## II. PARTIES

2.      Plaintiffs, Eric and Malise Moore, are natural persons residing in Haywood County, Tennessee, and are "consumers," as defined by the FCRA, 15 U.S.C. § 1681a(c)**,** and is a victim of repeated false credit reporting.

**Made Defendants herein are**:

3.      Upon information and belief, Defendant Equifax Information Services LLC, which may also hereinafter be referred to as "Equifax," "Defendant," "Defendants," "CRA," "CRA Defendant," or "CRA Defendants" is a Georgia limited liability company that does substantial business in this judicial district and may be served by delivering a summons to its headquarters, 1550 Peachtree Street, Northwest, Atlanta, Georgia 30309.  Equifax is a nationwide consumer reporting agency ("CRA") as defined by 15 U.S.C. § 1681a(f). Equifax regularly engages in the business of assembling, evaluating, and disbursing information concerning consumers for the purposes of furnishing "consumer reports" as defined by 15 U.S.C. § 1681a(f) to third parties. Equifax disburses such consumer reports to third parties of contract for monetary compensation.

4.      Upon information and belief, Defendant Experian Information Solutions, Inc., which may also hereinafter be referred to as "Experian", "Defendant," "Defendants," "CRA," or "CRA Defendant," or "CRA Defendants," is an Ohio corporation that does business in this judicial district and may be served by delivering a summons to its headquarters, 475 Anton Blvd., Costa Mesa,

California 92626. Experian is a nationwide CRA as defined by 15 U.S.C. § 1681a(f). Experian regularly engages in the business of assembling, evaluating, and disbursing information concerning consumers for the purposes of furnishing "consumer reports" as defined by 15 U.S.C. § 1681a(f) to third parties. Experian disburses such consumer reports to third parties of contract for monetary compensation.

5.     Upon information and belief, Defendant Trans Union LLC, which may also hereinafter be referred to as "Trans Union", "Defendant," "Defendants," "CRA," "CRA Defendant," or "CRA Defendants" is an Illinois limited liability company that does business in this judicial district and may be served by delivering a summons to its headquarters, 555 West Adams Street, Chicago, Illinois 60681. Trans Union is a nationwide CRA as defined by 15 U.S.C. § 1681a(f). Trans Union regularly engages in the business of assembling, evaluating, and disbursing information concerning consumers for the purposes of furnishing "consumer reports" as defined by 15 U.S.C. § 1681a(f) to third parties. Trans Union disburses such consumer reports to third parties of contract for monetary compensation.

6.     Upon information and belief, Defendant Nationstar Mortgage LLC, successor by merger to Seterus, Inc. or Mr. Cooper, which may also hereinafter be referred to as "Nationstar," "Seterus/Nationstar," "Seterus"," "Defendant," "Defendants," "Furnisher Defendant," or "Furnisher Defendants," is a Delaware limited liability company that does substantial business in this judicial district and may be served by delivering a summons to its Legal Department at its headquarters, 8950 Cypress Waters Blvd., Coppell, Texas 75019. Nationstar is a "person," as defined by the FCRA, 15 U.S.C. § 1681a(b), and a furnisher of consumer credit information to consumer reporting

agencies.

7.      As used herein, "consumer reporting agency," or "CRA," means any person which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports (commonly referred to as "credit reports") to third parties, and which uses any means or facility of interstate commerce for the purpose of preparing or furnishing consumer reports and is an entity in the business of collecting, maintaining and disseminating information regarding the credit-worthiness of individuals. CRAs specifically include, but are not limited to, Equifax, Experian, and TransUnion.

### III.  JURISDICTION AND VENUE

8.      Plaintiffs respectfully assert that this Honorable Court has jurisdiction in this case arises under federal law. 28 U.S.C. § 1331, 1334, and 1367 and 15 U.S.C. § 1681(p). Plaintiffs also assert actions under states' laws which may be brought within the supplemental jurisdiction of this Court and Plaintiffs respectfully request that this Honorable Court exercise supplemental jurisdiction over said claims. 28 U.S.C. § 1367.

9.      Venue is proper in this District, because CRA Defendants and Nationstar transact business in this District. Nationstar's headquarters is located in this judicial district, a substantial part of the conduct complained of occurred in this district, and various actions made basis of Plaintiffs' claims against Defendants occurred in the Northern District of Texas as further described. 28 U.S.C. § 1391.

10. Venue is further proper in this District, because CRA Defendants entered into agreements

with Nationstar in this judicial district to receive credit reporting data concerning Plaintiffs. Any and all requests to investigate Plaintiffs' disputes sent from the CRA Defendants as part of their reinvestigation was submitted to Nationstar's headquarters and investigated by the furnisher Nationstar using Nationstar's resources located at or closely connected to this judicial district. Nationstar managed Plaintiffs' mortgage from this judicial district including communicating amounts owed and conducting numerous communications via phone and letter.

## IV.  FACTUAL ALLEGATIONS

11.     Upon information and belief, in or around July 2005 Plaintiffs secured a mortgage for their property located at 111 Hillcrest Dr., Brownsville, TN 38012.

12.     Sometime thereafter, Seterus Inc. acquired Plaintiffs' mortgage loan and assigned loan number 659002540xxxx, hereinafter ("Seterus mortgage account").

13.     On May 31, 2017, Plaintiffs jointly filed for a Chapter 13 bankruptcy. A redacted copy of Plaintiffs' chapter 13 bankruptcy docket report is attached hereto as Exhibit "A".

14.     On August 18, 2017, Plaintiffs' Chapter 13 payment plan was confirmed. *See* Exhibit "A".

15.     Sometime thereafter, Seterus was sold, including all rights, liabilities, mortgage loan servicing responsibilities, and furnishing responsibilities, to Nationstar.

16.     Plaintiffs' Seterus Mortgage was included with the above referenced sale, and thus, was transferred to Nationstar and assigned a loan number of 65987xxxx (hereinafter "Nationstar Mortgage account").

17.     In or around February 2021, Select Portfolio Servicing ("SPS") acquired the

mortgage from Nationstar. *See* Exhibit "A".

18.     In or around June 2021, MTGLQ Investors, L.P. acquired the mortgage from SPS, hereinafter "MTGLQ mortgage account"). *See* Exhibit "A".

19.     On September 16, 2022, Plaintiffs were discharged form their chapter 13 bankruptcy, and excepted from discharge Plaintiffs' Mortgage. A redacted copy of Plaintiff's Chapter 13 Bankruptcy Discharge Order is attached hereto as Exhibit "B".

20.     Read in concert, Sections 1322(a)(2), 1322(b)(5), and 1328(a)(1) of the Bankruptcy Code, bar discharging home mortgage debts in a Chapter 13 Bankruptcy.

21.     On November 16, 2022, Timothy H. Ivy, Trustee for Plaintiffs' Chapter 13 Bankruptcy filed a Chapter 13 Standing Trustee's Final Report and Account. A redacted copy of Plaintiffs' Chapter 13 Bankruptcy Trustee's Final Report and Account is attached hereto as Exhibit "C".

22.     On or around November 17, 2022, Plaintiff's Chapter 13 Bankruptcy was terminated. *See* Exhibit "A".

23.     Throughout Plaintiffs' Chapter 13 Bankruptcy, under direct or indirect order from the bankruptcy Trustee, timely monthly mortgage payments were made to the Seterus, Nationstar, SPS, and MTGLQ mortgage accounts.

24.     After discharge, Plaintiffs mortgage loan was acquired by Shellpoint and to this day Plaintiffs continue to make timely mortgage payments to the now Shellpoint mortgage account.

25.     Sometime in April 2023, Plaintiffs obtained their three-bureau credit report and noticed that the Equifax, Experian, and Trans Union credit report(s) were not accurate. A redacted copy of Plaintiffs' three-bureau credit reports are each attached hereto as Exhibit "D".

26.    Within the Equifax credit report Plaintiffs noticed that it reported both the Seterus and Nationstar mortgage accounts without the correct update that indicated that this secured debt was no longer part of the bankruptcy, as derogatory, as being in a wage earner plan and with references to the Chapter 13 Bankruptcy. The reporting is incorrect because Plaintiffs complied with the terms of the chapter 13 bankruptcy plan, were successfully discharged—excepted the secured Seterus/Nationstar/SPS/MTGLQ mortgage debt from being discharged, therefore, any remarks and/or references to Plaintiffs' chapter 13 bankruptcy should have been removed from the Seterus and Nationstar Mortgage tradelines after the Bankruptcy was discharged. [1]

27.    Metro 2 guidelines require furnishers and CRAs to update the reporting of an account when the borrower associated to the account filed chapter 13 bankruptcy by first updating the Consumer Information Indicator ("CII") to "D", and then continuing to furnish the monthly payment history information with a value of "D". Metro 2 guidelines further require furnishers and CRAs to update the reporting of an account when the borrower associated to the account is discharged from chapter 13 bankruptcy by updating the CII to "Q". In following these simple Metro 2 guidelines, which are well regarded as the industry standards, it prevents the reporting of any late payment history during the pendency of a consumer's chapter 13 Bankruptcy, and allows payments made by the consumer after the chapter 13 bankruptcy is discharged to be reported. Metro 2 guidelines are followed by both furnishers and CRAs.

28.    Within the Experian credit report Plaintiffs noticed that it reported the Seterus

---

[1] The Consumer Data Industry Association's Metro 2 reporting standards specifically instruct consumer reporting agencies to remove any suppression codes associated with bankruptcy reporting for an account once the chapter 13 bankruptcy is discharged so that ongoing payments made by the consumer can be reported.

mortgage account without the correct update that indicated that this secured debt was no longer part of the bankruptcy, as potentially being discharged through bankruptcy, as derogatory, as being in a wage earner plan and with references to the Chapter 13 Bankruptcy. Plaintiff Malise Moore noticed that it reported the Nationstar account the same way. The reporting is incorrect because Plaintiffs complied with the terms of the chapter 13 bankruptcy plan, were successfully discharged—excepted the secured Seterus/Nationstar/SPS/MTGLQ mortgage debt from being discharged, therefore, any remarks and/or references to Plaintiffs' chapter 13 bankruptcy should have been removed from the Seterus and Nationstar Mortgage tradelines after the Bankruptcy was discharged.[2]

29.    Metro 2 guidelines require furnishers and CRAs to update the reporting of an account when the borrower associated to the account filed chapter 13 bankruptcy by first updating the Consumer Information Indicator ("CII") to "D", and then continuing to furnish the monthly payment history information with a value of "D". Metro 2 guidelines further require furnishers and CRAs to update the reporting of an account when the borrower associated to the account is discharged from chapter 13 bankruptcy by updating the CII to "Q". In following these simple Metro 2 guidelines, which are well regarded as the industry standards, it prevents the reporting of any late payment history during the pendency of a consumer's chapter 13 Bankruptcy, and allows payments made by the consumer after the chapter 13 bankruptcy is discharged to be reported. Metro 2 guidelines are followed by both furnishers and CRAs.

30.    Notably .Plaintiff Eric Moore noticed that Experian reported the Nationstar account

---

[2] The Consumer Data Industry Association's Metro 2 reporting standards specifically instruct consumer reporting agencies to remove any suppression codes associated with bankruptcy reporting for an account once the chapter 13 bankruptcy is discharged so that ongoing payments made by the consumer can be reported.

accurately.

31.     Within the Trans Union credit report Plaintiffs noticed that it reported the Seterus and Nationstar mortgage accounts without the correct update that indicated that this secured debt was no longer part of the bankruptcy, as derogatory, as being in a wage earner plan and with references to the Chapter 13 Bankruptcy. The reporting is incorrect because Plaintiffs complied with the terms of the chapter 13 bankruptcy plan, were successfully discharged—excepted the secured Seterus/Nationstar/SPS/MTGLQ mortgage debt from being discharged, therefore, any remarks and/or references to Plaintiffs' chapter 13 bankruptcy should have been removed from the Seterus and Nationstar Mortgage tradelines after the Bankruptcy was discharged. [3]

32.     Metro 2 guidelines require furnishers and CRAs to update the reporting of an account when the borrower associated to the account filed chapter 13 bankruptcy by first updating the Consumer Information Indicator ("CII") to "D", and then continuing to furnish the monthly payment history information with a value of "D". Metro 2 guidelines further require furnishers and CRAs to update the reporting of an account when the borrower associated to the account is discharged from chapter 13 bankruptcy by updating the CII to "Q". In following these simple Metro 2 guidelines, which are well regarded as the industry standards, it prevents the reporting of any late payment history during the pendency of a consumer's chapter 13 Bankruptcy, and allows payments made by the consumer after the chapter 13 bankruptcy is discharged to be reported. Metro 2 guidelines are followed by both furnishers and CRAs.

---

[3] The Consumer Data Industry Association's Metro 2 reporting standards specifically instruct consumer reporting agencies to remove any suppression codes associated with bankruptcy reporting for an account once the chapter 13 bankruptcy is discharged so that ongoing payments made by the consumer can be reported.

33.    On or about May 2023, Plaintiffs sent direct disputes to Equifax, Experian, and Trans Union, and requested that the CRA Defendants investigate the reporting of the Seterus and Nationstar mortgage accounts. Plaintiffs requested that under the FCRA, each CRA Defendant conduct a reasonable investigation and/or remedy the inaccuracies on Plaintiffs' credit reports concerning the Seterus and Nationstar mortgage account.

34.    Within these dispute letters, Plaintiffs described in great detail the issues and the misreporting following their respective bankruptcies and enclosed copies of either their bankruptcy docket report, trustee final report, and/or discharge order. Redacted copies of Plaintiffs' unsigned dispute letters sent to Equifax are each attached hereto as Exhibit "E". Redacted copies of Plaintiffs' unsigned dispute letters sent to Experian are each attached hereto as Exhibit "F". Redacted copies of Plaintiffs' unsigned dispute letters sent to Trans Union are each attached hereto as Exhibit "G".

35.    Equifax responded to Plaintiff Eric Moore on June 8, 2023 and to Plaintiff Malise Moore on May 30, 2023 and concerning the Seterus tradeline Plaintiffs could not decipher the result and concerning the Nationstar tradeline noticed it stated, it was currently reporting as included in bankruptcy. Redacted copies of Equifax's Responses to Plaintiffs are each attached hereto as Exhibit "H".

36.    Plaintiffs then obtained an updated copy of his/her three-bureau credit report on July 12, 2023 and within the Equifax credit report noticed that the Seterus and Nationstar tradelines continued to report the same inaccuracies despite being discharged from chapter 13 bankruptcy. Redacted copies of Plaintiffs' respective July 12, 2023 Three-bureau Credit Reports are each attached hereto as Exhibit "I".

37.    Equifax's responses, or lack thereof, were not the result of a reasonable investigation

into Plaintiffs' disputes and failed to remedy the inaccuracies within the Seterus and Nationstar tradelines and gave no explanation as to why it failed to sufficiently update the Seterus and Nationstar Mortgage tradelines when Plaintiffs filed chapter 13 bankruptcy, complied with the requirements of the chapter 13 bankruptcy plan, were successfully discharged, and continued to make payments on the Mortgage account because it was still open following the bankruptcy discharge.

38.     Equifax's responses were not the result of reasonable investigations into Plaintiffs' disputes for they did not adequately evaluate or consider Plaintiffs' information, claims, or evidence and failed to remedy the inaccuracies within the Seterus and Nationstar Mortgage tradelines.

39.      Plaintiffs sent very clear disputes, and yet Equifax made no changes to the disputed information, bankruptcy status, and/or account status.

40.     Equifax chose to "verify" false information from an unreliable source, failed to correct the inaccurate information, and continued to publish the inaccurate information regarding Plaintiffs' Seterus and Nationstar accounts.

41.     Upon the Plaintiffs' request to Equifax for verification and addition regarding the Seterus and Nationstar mortgage accounts, and in accordance with Equifax's standard procedures, Equifax did not evaluate or consider any of Plaintiffs' information, claims or evidence. Importantly, Equifax failed to maintain procedures which would ensure that, if any investigation took place, it would provide Plaintiffs with a response communicating the results. Further, Equifax did not make any attempt to substantially or reasonably verify the Seterus and Nationstar Mortgage accounts.

42.     In the alternative, and in accordance with Equifax's standard procedures, Equifax failed to contact Nationstar, therefore, failed to perform any investigation at all.

43. In the alternative to the allegation that Equifax failed to contact Nationstar, it is alleged that Equifax did forward some notice of the dispute to Nationstar, and Nationstar failed to conduct a lawful investigation.

44. Experian received each Plaintiff 's dispute on May 27, 2023. Redacted copies of the Certified Mail Receipts and Proofs of Delivery for each Plaintiff's Experian Dispute Letter are attached hereto as Exhibit "J".

45. Upon information and belief, Experian did not respond to Plaintiffs disputes.

46. Plaintiffs then obtained an updated copy of their three-bureau credit reports on July 12, 2023 and within the Experian credit report Plaintiffs noticed that the Seterus tradeline continued to report the same inaccuracies. The Nationstar tradeline continued to report the same inaccuracies for Malise Moore and now, for Eric, the once accurate Nationstar tradeline reported inaccurately. It now reported without the correct update that indicated that this secured debt was no longer part of the bankruptcy, as potentially being discharged through bankruptcy, as derogatory, as being included in a chapter 13 bankruptcy. *See* Exhibit "I".

47. Experian's responses, or lack thereof, were not the result of a reasonable investigation into Plaintiffs' disputes and failed to remedy the inaccuracies within the Seterus and Nationstar tradelines and gave no explanation as to why it failed to sufficiently update the Seterus and Nationstar tradelines when Plaintiffs filed chapter 13 bankruptcy, complied with the requirements of the chapter 13 bankruptcy plan, were successfully discharged, and continued to make payments on the mortgage account because it was still open following the bankruptcy discharge.

48. Experian's responses were not the result of reasonable investigations into Plaintiffs'

disputes for they did not adequately evaluate or consider Plaintiffs' information, claims, or evidence and failed to remedy the inaccuracies within the Seterus and Nationstar Mortgage tradelines.

49.    Plaintiffs sent very clear disputes, and yet Experian made no changes to the disputed information, bankruptcy status, and/or account status.

50.    Experian chose to "verify" false information from an unreliable source, failed to correct the inaccurate information, and continued to publish the inaccurate information regarding Plaintiffs' Seterus and Nationstar accounts.

51.    Upon the Plaintiffs' request to Experian for verification and addition regarding the Seterus and Nationstar mortgage accounts, and in accordance with Experian's standard procedures, Experian did not evaluate or consider any of Plaintiffs' information, claims or evidence. Importantly, Experian failed to maintain procedures which would ensure that, if any investigation took place, it would provide Plaintiffs with a response communicating the results. Further, Experian did not make any attempt to substantially or reasonably verify the Seterus and Nationstar Mortgage accounts.

52.    In the alternative, and in accordance with Experian's standard procedures, Experian failed to contact Nationstar, therefore, failed to perform any investigation at all.

53.    In the alternative to the allegation that Experian failed to contact Nationstar, it is alleged that Experian did forward some notice of the dispute to Nationstar, and Nationstar failed to conduct a lawful investigation.

54.    Trans Union responded to Plaintiff Eric Moore on June 20, 2023 and Plaintiff Malise Moore on June 9, 2023 and concerning the Seterus and Nationstar tradelines deleted, rather than modified the reporting for both accounts. Redacted copies of Trans Union's Responses to each

Plaintiff are attached hereto as Exhibit "K".

55.    Trans Union's responses, or lack thereof, were not the result of a reasonable investigation into Plaintiffs' disputes and failed to remedy the inaccuracies within the Seterus and Nationstar tradelines and gave no explanation as to why it failed to sufficiently update the Seterus and Nationstar tradelines when Plaintiffs filed chapter 13 bankruptcy, complied with the requirements of the chapter 13 bankruptcy plan, were successfully discharged, and continued to make payments on the mortgage account because it was still open following the bankruptcy discharge.

56.     Plaintiffs sent very clear disputes, and yet Trans Union made no changes to the disputed information, bankruptcy status, and/or account status.

57.    Trans Union chose to "verify" false information from an unreliable source, failed to correct the inaccurate information, and inappropriately deleted Plaintiffs' Seterus and Nationstar accounts.

58.    Upon the Plaintiffs' request to Trans Union for verification and addition regarding the Seterus and Nationstar mortgage accounts, and in accordance with Trans Union's standard procedures, Trans Union did not evaluate or consider any of Plaintiffs' information, claims or evidence. Importantly, Trans Union failed to maintain procedures which would ensure that, if any investigation took place, it would provide Plaintiffs with a response communicating the results. Further, Trans Union did not make any attempt to substantially or reasonably verify the Seterus and Nationstar Mortgage accounts.

59.    In the alternative, and in accordance with Trans Union's standard procedures, Trans Union failed to contact Nationstar, therefore, failed to perform any investigation at all.

60.    In the alternative to the allegation that Trans Union failed to contact Nationstar, it is alleged that Trans Union did forward some notice of the dispute to Nationstar, and Nationstar failed to conduct a lawful investigation.

61.    In May 2023, Plaintiffs sent direct dispute letters directly to Seterus/Nationstar and included copies of the exact dispute letters they each sent to the credit reporting agencies.

62.    Plaintiffs sufficiently identified themselves as borrowers and asked Seterus/Nationstar to investigate its servicing and reporting of the Seterus and Nationstar mortgage accounts and asked them to provide information and fix any errors.

63.    Redacted copies of Plaintiffs' unsigned dispute letters sent to Seterus/Nationstar are each attached hereto as Exhibit "L".

64.    A USPS Tracking receipt shows that Seterus/Nationstar received and picked up Plaintiffs' dispute letters. A redacted copy of the USPS Tracking receipts for Plaintiffs' direct dispute letters to Seterus/Nationstar is attached hereto as Exhibit "M".

65.    Seterus/Nationstar responded to Plaintiffs' but did not reference that they'd make any corrections to the credit reporting. A redacted copy of Seterus/Nationstar's response to Plaintiffs is attached hereto as Exhibit "N".[4]

## V.  GROUNDS FOR RELIEF

### COUNT I – EQUIFAX'S VIOLATION OF THE FCRA
### (15 U.S.C. § 1681e(b))

66.    The Plaintiffs reallege and incorporate all paragraphs above as if fully set out herein.

---

[4] Upon information and belief, there was a 2023 initial letter as well. What is in the Exhibit "N" is the information included with the 2023 letter.

67.    Equifax violated 15 U.S.C. § 168le(b) by failing to establish or follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports and credit files it published and maintained concerning the Plaintiffs.

68.    The FCRA mandates that "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible **accuracy** of the information concerning the individual about whom the report relates." 15 U.S.C. § 168le(b) (emphasis added).

69.    Plaintiffs furnished Equifax the necessary documentation supporting Plaintiffs' tradeline, yet Equifax continued to prepare a patently false consumer report concerning Plaintiffs.

70.    Despite actual and implied knowledge that Plaintiffs' credit reports were and are not accurate, Equifax readily provided false reports to one or more third parties, thereby misrepresenting Plaintiffs, and ultimately Plaintiff's' creditworthiness.

71.    After Equifax knew or should have known Plaintiffs' account statuses in relation to their bankruptcy were inaccurate, they failed to make the corrections.

72.    As a result of Equifax's conduct, action, and inaction, the Plaintiffs suffered damages, including, but not limited to, denial in attempts to refinance, loss in ability to finance goods, loss of credit, loss of the ability to purchase and benefit from a credit, and suffering the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials.

73.    Equifax's conduct, action, and inaction, were willful, rendering it liable to Plaintiffs for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 168ln. In the alternative, such conduct, action, and inaction, were negligent, entitling the Plaintiffs to recover under 15 U.S.C. § 1681o.

74.     The Plaintiffs are entitled to recover costs and attorney's fees from Equifax in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or 1681o.

## COUNT II – EQUIFAX'S VIOLATION OF THE FCRA
## (15 U.S.C. §1681i)

75.     The Plaintiffs reallege and incorporate all paragraphs above as if fully set out herein.

76.     Equifax violated § 1681i by failing to update inaccurate information in the Plaintiffs' credit files after receiving actual notice of such inaccuracies, failing to conduct a lawful reinvestigation, failing to forward all relevant information to furnisher(s), failing to maintain reasonable procedures with which to filter and verify disputed information in the Plaintiffs' credit files, and relying upon verification from a source it has reason to know is unreliable.

77.     As a result of Equifax's conduct, action, and inaction, the Plaintiffs suffered damages, including, but not limited to, loss in ability to finance goods, loss of credit, loss of the ability to purchase and benefit from a credit, and suffering the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials.

78.     Equifax's conduct, action, and inaction, were willful, rendering it liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, such conduct, action, and inaction were negligent entitling the Plaintiffs to recover actual damages under 15 U.S.C. § 1681o.

79.     The Plaintiffs are entitled to recover costs and attorney's fees from Equifax in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or 1681o.

## COUNT III – EXPERIAN'S VIOLATION OF THE FCRA
## (15 U.S.C. § 1681e(b))

80.     The Plaintiffs reallege and incorporate all paragraphs above as if fully set out herein.

81.     Experian violated 15 U.S.C. § 168le(b) by failing to establish or follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports and credit files it published and maintained concerning the Plaintiffs.

82.     The FCRA mandates that "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible **accuracy** of the information concerning the individual about whom the report relates." 15 U.S.C. § 168le(b) (emphasis added).

83.     Plaintiffs furnished Experian the necessary documentation supporting Plaintiffs' tradeline, yet Experian continued to prepare a patently false consumer report concerning Plaintiffs.

84.     Despite actual and implied knowledge that Plaintiffs' credit reports were and are not accurate, Experian readily provided false reports to one or more third parties, thereby misrepresenting Plaintiffs, and ultimately Plaintiff's' creditworthiness.

85.     After Experian knew or should have known Plaintiffs' account statuses in relation to their bankruptcy were inaccurate, they failed to make the corrections.

86.     As a result of Experian's conduct, action, and inaction, the Plaintiffs suffered damages, including, but not limited to, denial in attempts to refinance, loss in ability to finance goods, loss of credit, loss of the ability to purchase and benefit from a credit, and suffering the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials.

87.     Experian's conduct, action, and inaction, were willful, rendering it liable to Plaintiffs for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 168ln. In

the alternative, such conduct, action, and inaction, were negligent, entitling the Plaintiffs to recover under 15 U.S.C. § 1681o.

88.     The Plaintiffs are entitled to recover costs and attorney's fees from Experian in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or 1681o.


## COUNT IV – EXPERIAN'S VIOLATION OF THE FCRA
## (15 U.S.C. §1681i)

89.     The Plaintiffs reallege and incorporate all paragraphs above as if fully set out herein.

90.     Experian violated § 1681i by failing to update inaccurate information in the Plaintiffs' credit files after receiving actual notice of such inaccuracies, failing to conduct a lawful reinvestigation, failing to forward all relevant information to furnisher(s), failing to maintain reasonable procedures with which to filter and verify disputed information in the Plaintiffs' credit files, and relying upon verification from a source it has reason to know is unreliable.

91.     As a result of Experian's conduct, action, and inaction, the Plaintiffs suffered damages, including, but not limited to, loss in ability to finance goods, loss of credit, loss of the ability to purchase and benefit from a credit, and suffering the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials.

92.     Experian's conduct, action, and inaction, were willful, rendering it liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, such conduct, action, and inaction were negligent entitling the Plaintiffs to recover actual damages under 15 U.S.C. § 1681o.

93.     The Plaintiffs are entitled to recover costs and attorney's fees from Experian in an

amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or 1681o.

## COUNT V – TRANS UNION'S VIOLATION OF THE FCRA
### (15 U.S.C. §1681e(b))

94.     The Plaintiffs reallege and incorporate all paragraphs above as if fully set out herein.

95.     Trans Union violated 15 U.S.C. § 168le(b) by failing to establish or follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports and credit files it published and maintained concerning the Plaintiffs.

96.     The FCRA mandates that "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible **accuracy** of the information concerning the individual about whom the report relates." 15 U.S.C. § 168le(b) (emphasis added).

97.     Plaintiffs furnished Trans Union the necessary documentation supporting Plaintiffs' tradeline, yet Trans Union continued to prepare a patently false consumer report concerning Plaintiffs.

98.     Despite actual and implied knowledge that Plaintiffs' credit reports were and are not accurate, Trans Union readily provided false reports to one or more third parties, thereby misrepresenting Plaintiffs, and ultimately Plaintiff's' creditworthiness.

99.     After Trans Union knew or should have known Plaintiffs' account statuses in relation to their bankruptcy were inaccurate, they failed to make the corrections. Further, Plaintiffs did not request for the Seterus and Nationstar mortgage tradelines be deleted.

100.    As a result of Trans Union's conduct, action, and inaction, the Plaintiffs suffered damages, including, but not limited to, denial in attempts to refinance, loss in ability to finance

goods, loss of credit, loss of the ability to purchase and benefit from a credit, and suffering the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials.

101.    Trans Union's conduct, action, and inaction, were willful, rendering it liable to Plaintiffs for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 168ln. In the alternative, such conduct, action, and inaction, were negligent, entitling the Plaintiffs to recover under 15 U.S.C. § 1681o.

102.    The Plaintiffs are entitled to recover costs and attorney's fees from Trans Union in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or 1681o.

**COUNT VI – TRANS UNION'S VIOLATION OF THE FCRA**
**(15 U.S.C. §1681i)**

103.    The Plaintiffs reallege and incorporate all paragraphs above as if fully set out herein.

104.    Trans Union violated § 1681i by failing to update inaccurate information in the Plaintiffs' credit files after receiving actual notice of such inaccuracies, failing to conduct a lawful reinvestigation, failing to forward all relevant information to furnisher(s), failing to maintain reasonable procedures with which to filter and verify disputed information in the Plaintiffs' credit files, and relying upon verification from a source it has reason to know is unreliable.

105.    As a result of Trans Union's conduct, action, and inaction, the Plaintiffs suffered damages, including, but not limited to, loss in ability to finance goods, loss of credit, loss of the ability to purchase and benefit from a credit, and suffering the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials.

106.    Trans Union's conduct, action, and inaction, were willful, rendering it liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, such conduct, action, and inaction were negligent

entitling the Plaintiffs to recover actual damages under 15 U.S.C. § 1681o.

107.    The Plaintiffs are entitled to recover costs and attorney's fees from Trans Union in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or 1681o.

**COUNT VII – SETERUS/NATIONSTAR'S VIOLATION OF THE FCRA**
**(15 U.S.C. §1681s-2(b))**

108.    The Plaintiffs reallege and incorporate all paragraphs above as if fully set out herein.

109.    Defendant Seterus/Nationstar violated 15 U.S.C. § 1681s-2(b) by failing to conduct reasonable investigations upon receiving notice of Plaintiffs' dispute(s) from one or more consumer reporting agencies, and/or failing to appropriately report the results of their investigations, and/or failing to appropriately modify the information.

110.    Seterus/Nationstar further violated 15 U.S.C. § 1681s-2(b) by continuing to report the Seterus/Nationstar representations within Plaintiffs' credit files with the CRA Defendants without also including a notation that this debt was disputed, failing to fully and properly investigate the Plaintiffs' dispute(s) of the Seterus/Nationstar representations, failing to accurately respond to the CRA Defendants, failing to correctly report results of an accurate investigation to every other consumer reporting agency, and failing to permanently and lawfully correct its own internal records to prevent the re-reporting of the Seterus/Nationstar representations to the consumer reporting agencies.

111.    As a result of Seterus/Nationstar's conduct, action, and inaction, the Plaintiffs suffered damages, including, but not limited to, loss in ability to finance goods, loss of credit, loss of the ability to purchase and benefit from a credit, and suffering the mental and emotional pain,

anguish, humiliation, and embarrassment of credit denials.

112.    Seterus/Nationstar's conduct, action, and inaction, were willful, rendering it liable for actual or statutory, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, it was negligent entitling the Plaintiffs to recover actual damages under 15 U.S.C. § 1681o.

## VI.  VICARIOUS LIABILITY/RESPONDEAT SUPERIOR

113.    Plaintiffs will be able to show, after reasonable discovery, that all actions at issue were taken by employees, agents, servants, or representatives, of any type, for Defendants, the principals, within the line and scope of such individuals' (or entities') express or implied authority, through employment, agency, or representation, which imputes liability to Defendants for all such actions under the doctrine of respondeat superior and/or vicarious liability.

## VII. DAMAGES

114.    Plaintiffs respectfully request that this Honorable Court instruct the jury, as the trier of facts, that in addition to actual or compensatory damages, punitive or exemplary damages may be awarded against the Defendants under the provisions of the FCRA and/or states' laws, including Texas.

115.    Plaintiffs respectfully request that this Honorable Court award Plaintiffs their litigation expenses and other costs of litigation and reasonable attorney's fees incurred in this litigation, in accordance with the provisions of the FCRA and/or other laws.

116.    The above and foregoing actions, inactions, and fault of Defendants, as to each and

every claim, have proximately caused a wide variety of damages to Plaintiffs.

117.    Defendants performed perfunctory and essentially useless reinvestigations resulting in the verification of false reportings about the Plaintiffs and have been a substantial factor in causing credit denials and other damages.

118.    Plaintiffs suffered a variety of damages, including economic and non-economic damages as prayed for herein.

119.    Defendants have negligently and/or willfully violated various provisions of the FCRA and are thereby liable unto Plaintiffs.

120.    Defendants are liable unto Plaintiffs for all actual, statutory, exemplary and punitive damages awarded in this case, as well as other demands and claims asserted herein including, but not limited to, out-of-pocket expenses, credit denials, costs and time of repairing their credit, pain and suffering, embarrassment, inconvenience, lost economic opportunity, loss of incidental time, frustration, emotional distress, mental anguish, fear of personal and financial safety and security, attorney's fees, and court costs, and other assessments proper by law and any and all other applicable federal and state laws, together with legal interest thereon from date of judicial demand until paid.

**WHEREFORE PREMESIS CONSIDERED**, Plaintiffs, Eric and Malise Moore, pray that this Honorable Court:

A.    Enter Judgment in favor of Plaintiffs and against Defendants Equifax Information Services LLC, Experian Information Solutions, Inc., Trans Union LLC, and Nationstar Mortgage LLC, successor by merger to Seterus, Inc. jointly, severally, and in solido, for all reasonable damages sustained by Plaintiffs, including, but not limited to, actual damages, compensatory damages, out-of-

pocket expenses, credit denials, costs and time of repairing their credit, pain and suffering, embarrassment, inconvenience, lost economic opportunity, loss of incidental time, frustration, emotional distress, mental anguish, and fear of personal and financial safety and security for Defendants' violations of the FCRA, applicable state law, and common law;

B.      Find that the appropriate circumstances exist for an award of punitive damages to Plaintiffs;

C.      Award Plaintiffs pre-judgment and post-judgment interest, as allowed by law;

D.      Order that the CRA Defendants, Equifax Information Services LLC, Experian Information Solutions, Inc., and Trans Union LLC, and Furnisher Defendant, Nationstar Mortgage LLC, successor by merger to Seterus, Inc. work in conjunction, cooperatively, and/or individually to reinvestigate and correct the consumer report(s), credit report(s), data emanations, consumer histories, and credit histories of and concerning Plaintiffs and/or any of Plaintiffs' personal identifiers.

E.      Grant such other and further relief, in law or equity, to which Plaintiffs might show they are justly entitled.


Date Filed: August 18, 2023

                                Respectfully submitted,

                                */s/ Matthew P. Forsberg*
                                Matthew P. Forsberg
                                TX State Bar No. 24082581
                                Matt@FieldsLaw.com
                                FIELDS LAW FIRM
                                9999 Wayzata Blvd.
                                Minnetonka, Minnesota 55305
                                (612) 383-1868 (telephone)
                                (612) 370-4256 (fax)

**LAW OFFICE OF JONATHAN A. HEEPS**

/s/ *Jonathan A. Heeps*                    .
Jonathan A. Heeps
TX State Bar No. 24074387
LAW OFFICE OF JONATHAN A. HEEPS
Post Office Box 174372
Arlington, Texas 76003
Telephone (682) 738-6415
Fax (844) 738-6416
jaheeps@heepslaw.com


COUNSEL FOR PLAINTIFFS

## <u>JURY DEMAND</u>

Plaintiff hereby demands a trial by jury on all issues so triable.

<u>August 18, 2023</u>                              <u>*/s/ Matthew P. Forsberg*</u>
Date                                                     Matthew P. Forsberg